[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11209

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSHUA CURRY,
a.k.a. Laz Breed,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:20-cr-00039-AW-MAF-1

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and NEWSOM, Circuit Judges.

PER CURIAM:

Joshua Curry appeals his sentence of 324 months of imprisonment after he pleaded guilty to conspiring to sex traffic a minor, 18 U.S.C. §§ 1594(c), 1591(a)(1), 1591(a)(2), sex trafficking of a minor, *id.* §§ 2, 1591(a)(1), 1591(b)(2), and financially benefiting from sex trafficking of a minor, *id.* §§ 2, 1591(a)(2), 1591(b)(2). Curry argues, for the first time, that the district court erred in calculating his criminal history score by double counting his prior convictions for armed robbery with a deadly weapon without considering the provisions for grouping of offenses under the Sentencing Guidelines, United States Sentencing Guidelines Manual §§ 3D1.2, 4A1.1(e) (Nov. 2018). The government responds that the criminal-history and grouping provisions of the Guidelines address separate issues. We affirm.

Curry's presentence investigation report grouped his three counts of conviction because they involved the same minor victim and multiple acts or transactions connected by a common criminal objective or constituted part of a common scheme or plan. *Id.* § 3D1.2(b). The report calculated a total offense level of 38, a criminal history category of IV, and an advisory guideline range of 324 to 405 months of imprisonment. Curry's offense level included increases for unduly influencing a minor to engage in prohibited

sexual conduct, *id.* § 2G1.3(b)(2)(B), using a website and cellphone to solicit and arrange the minor victim's travel to engage in prohibited sexual conduct, *id.* § 2G1.3(b)(3), and providing transportation and other arrangements for the minor victim to engage in commercial sex acts, *id.* § 2G1.3(b)(4). His offense level also included an enhancement for being a repeat and dangerous sex offender against minors, *id.* § 4B1.5(b)(1), and a reduction for accepting responsibility, *id.* § 3E1.1.

Curry's prior convictions produced eight criminal history points. Six of those points related to his prior convictions for four counts of armed robbery with a deadly weapon and four counts of kidnapping, for which Curry was sentenced to eight concurrent terms of three years of imprisonment. The report applied three points for the sentence resulting from the first count of armed robbery. *Id.* § 4A.1.1(a). The report applied three additional points, under section 4A1.1(e), to account for the sentences resulting from the remaining three counts of armed robbery because they were crimes of violence under section 4B1.2(a). The report stated that the factual circumstances of the crime had been requested but not received. Instead of objecting to the guideline calculation, Curry asked the district court to vary below the guideline range "as if" the dangerous sex offender enhancement, *id.* § 4B1.5(b)(1), and the three additional criminal history points, *id.* § 4A1.1(e), did not apply.

The district court confirmed at sentencing that Curry had no objection to the guideline calculation. Curry explained that he had

not filed any objection because he was "trying to approach the [c]ourt with great candor and ask [] for [its] discretion under variance" and the sentencing factors, 18 U.S.C. § 3553(a). The district court found that Curry's argument that six criminal history points overstated the seriousness of the armed robbery offense was a "facially credible point" in the light of his receipt of only a three-year sentence and the lack of information about the prior offense. The district court continued sentencing and instructed the probation officer to locate records of the prior convictions.

According to police reports that were obtained after the hearing, the prior convictions were based on a robbery that occurred at a fast-food restaurant in 2006. After midnight, four men armed with knives and a pipe approached an employee who was working outside. The men announced, "This is a robbery," and took the employee's cell phone and wallet. The men entered the restaurant with the employee and took money from the office and cash register. The men also demanded the other employees' cell phones and made them enter the freezer, which they blocked with baskets of produce. An employee recognized one of the men as a former employee. Later, two employees identified both Curry and the former employee in separate lineups. One employee stated that she could not remember what Curry was armed with or what his role was, and the other employee stated that Curry was armed with a knife.

At the final sentencing, Curry stated again that he had "no legal objection to the guideline range" and relied on his arguments

for a downward variance based on the sentencing factors. But Curry stated that his "position [was] still the same about . . . the three additional points being added for the additional acts of violence" because he served only as the lookout during the robbery.

The district court sentenced Curry to 324 months of imprisonment. The district court stated that it considered Curry's argument about the additional criminal history points, but it could not say that the six points overstated the "extremely serious" nature of the crime and the eight serious felony counts. The district court stated that it had considered "whether [the offense] ought to be treated as only a three-point offense and to essentially ignore the other three [points]," but it could not do so. The district court also stated that it saw no reason for a downward variance. The government sought to clarify whether the district court would have imposed the same sentence regardless of the contested criminal history points. The district court stated, and Curry confirmed, that no legal objection had been raised to the guideline range and that Curry had asked only for a variance.

Curry argues that the district court erred by adding three criminal history points, under section 4A1.1(e), for the armed robbery convictions because these crimes were committed during a single criminal episode, which was an impermissible "double counting" because it clearly conflicted with section 3D1.2 regarding the grouping of crimes of conviction. Because this argument is not the same argument that Curry presented to the district court, as he expressly denied having any objection to his advisory

guideline range, we review only for plain error. *United States v. Suarez*, 893 F.3d 1330, 1335 (11th Cir. 2018). Under plain error review, Curry can obtain relief only if he proves that the district court committed an error that is plain and that affects his substantial rights. *Id.*

The district court did not plainly err. Curry identifies no binding precedent, nor does our research reveal any, that identifies an obvious conflict between sections 3D1.1 and 4A1.1. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). Nor could he.

Chapter 4 of the Guidelines governs the calculation of criminal history. Under section 4A1.1(a), a defendant receives three criminal history points for each prior sentence of imprisonment that exceeds one year and one month. U.S.S.G. § 4A1.1(a) (Nov. 2018). And, under section 4A1.1(e), one point is added for "each prior sentence resulting from a conviction of a crime of violence that did not receive any points . . . because such sentence was treated as a single sentence, up to a total of 3 points for this subsection." *Id.* § 4A1.1(e).

Part D of Chapter 3 provides rules "for determining a single offense level that encompasses all the counts of which the defendant is convicted." *Id.* ch. 3, pt. D, intro. cmt. The resulting combined offense level is used to determine the defendant's advisory sentence. *Id.* Specifically, section 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." *Id.* § 3D1.2.

These provisions govern different guideline determinations. Part D of Chapter 3 instructs when and how multiple counts of federal convictions in the instant proceeding should be grouped to determine the defendant's offense level. Indeed, the application notes provide a number of examples of how counts may be grouped, all of which concern federal crimes. *See generally* U.S.S.G. ch. 3, pt. D (providing, as examples, convictions for embezzling money, racketeering, drug trafficking, firearms dealing, and environmental offenses). But Part A of Chapter 4 governs a defendant's record of *past* criminal conduct, which "may represent convictions in the federal system, fifty state systems, the District of Columbia, territories, and foreign, tribal, and military courts." *See id.* ch. 4, pt. A. No conflict exists between these sections.

Curry erroneously argues that, because a defendant's "criminal history" is essentially a "catalogue of a defendant's crimes of convictions," the terms "criminal history" and "crimes of conviction" must mean the same thing under the Guidelines and that sections 3D1.2 and 4A1.1 are "plainly interrelated." As we have explained, the former section addresses the defendant's *instant* federal crimes of conviction, and the latter addresses his *past* convictions and criminal conduct. And even if the rule of lenity applies to advisory sentencing guidelines, the rule of lenity is inapposite because these guidelines are not ambiguous. *See United States v. Cingari*, 952 F.3d 1301, 1310–11 (11th Cir. 2020); *United States v. Wright*, 607 F.3d 708, 716–20 (11th Cir. 2010) (W. Pryor, J., concurring). And Curry fails to establish the relevance of *Wooden v.*

*United States*, 142 S. Ct. 1063, 1067 (2022) (interpreting the "different occasions" requirement of the Armed Career Criminal Act).

We **AFFIRM** Curry's sentence.